# United States Court of Appeals
## For the First Circuit

No. 12-1216

UNITED STATES OF AMERICA,

Appellee,

v.

WILLIAM E. ARMSTRONG, III,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Stahl, Circuit Judges.

Virginia G. Villa, Assistant Federal Defender, on brief for appellant.
Thomas E. Delahanty II, United States Attorney, with whom Renée M. Bunker, Assistant United States Attorney, on brief for appellee.

January 18, 2013

**TORRUELLA**, <u>Circuit Judge</u>.  Defendant-Appellant William E. Armstrong, III ("Appellant" or "Armstrong") asks us to reconsider arguments heard in and decided by this court regarding: (1) whether 18 U.S.C. § 922(g)(9) should be construed to exclude a purportedly non-violent offensive physical contact misdemeanor conviction as a predicate offense; and (2) whether applying § 922(g)(9) to such a prior conviction would violate a particular defendant's Second Amendment rights.  Since Circuit precedent in <u>United States</u> v. <u>Booker</u>, 644 F.3d 12 (1st Cir. 2011), and <u>United States</u> v. <u>Nason</u>, 269 F.3d 10 (1st Cir. 2001), forecloses the arguments made here, we affirm the district court's denial of Armstrong's motion to dismiss the indictment.

## I. Factual and Procedural Background

Armstrong was charged with one count of possessing firearms and ammunition after having been convicted of a misdemeanor crime of domestic violence in contravention of 18 U.S.C. § 922(g)(9).  As a predicate offense to the charge, the indictment listed a 2008 misdemeanor conviction for Armstrong's assault of his wife in violation of Maine's simple assault statute. Prior to that conviction, Armstrong had been convicted of two simple assaults: in 1992 and 2002.  The 2002 and 2008 convictions were for domestic assaults against his wife, Rosanna Armstrong.

The 2008 assault was described by the district court as follows.  Armstrong's wife called the police on or about

December 29, 2008, after, as she described to them, she and her husband had gotten in an argument about baking cookies, and Armstrong pushed her. She pushed him back, and the situation escalated until Armstrong hit her "hard." Armstrong was charged and convicted of domestic violence assault under Maine's simple assault statute for "intentionally, knowingly or recklessly caus[ing] bodily injury or offensive physical contact to Rosanna Armstrong."

On May 11, 2010, the Maine State Police conducted a search under warrant of the Armstrong residence for drug paraphernalia and/or marijuana possession. During this search, the police discovered six firearms and a large amount of ammunition. Since the items were not within the scope of the warrant, the police called the Bureau of Alcohol, Tobacco & Firearms ("ATF") to inform it that Armstrong was a prohibited person and had firearms in his residence. Officers also notified Armstrong that he could not have firearms in his home. Armstrong's wife then called a family friend who came and removed the firearms and brought them to his residence, where he had possession of an SKS rifle that also belonged to Armstrong at the time the original search warrant was executed.

On May 19, 2010, the ATF executed a federal warrant at the Armstrong residence, and while the officers did not find any firearms, they recovered over 1,300 rounds of various types of

December 29, 2008, after, as she described to them, she and her husband had gotten in an argument about baking cookies, and Armstrong pushed her. She pushed him back, and the situation escalated until Armstrong hit her "hard." Armstrong was charged and convicted of domestic violence assault under Maine's simple assault statute for "intentionally, knowingly or recklessly caus[ing] bodily injury or offensive physical contact to Rosanna Armstrong."

On May 11, 2010, the Maine State Police conducted a search under warrant of the Armstrong residence for drug paraphernalia and/or marijuana possession. During this search, the police discovered six firearms and a large amount of ammunition. Since the items were not within the scope of the warrant, the police called the Bureau of Alcohol, Tobacco & Firearms ("ATF") to inform it that Armstrong was a prohibited person and had firearms in his residence. Officers also notified Armstrong that he could not have firearms in his home. Armstrong's wife then called a family friend who came and removed the firearms and brought them to his residence, where he had possession of an SKS rifle that also belonged to Armstrong at the time the original search warrant was executed.

On May 19, 2010, the ATF executed a federal warrant at the Armstrong residence, and while the officers did not find any firearms, they recovered over 1,300 rounds of various types of

ammunition.  The officers requested that Armstrong appear at the sheriff's office, and Armstrong explained there that he was told to remove the firearms from his home and that his wife had called his friend, who took the guns away.  Armstrong then took the officers to his friend's residence, where the ATF agents observed the six firearms noted by the Maine State Police as well as the SKS rifle.

Armstrong was arrested and charged with one count of violating § 922(g)(9).  In a pre-trial motion to dismiss the indictment, Armstrong challenged the indicted charge on the grounds that it did not state a federal offense and that, as applied to a conviction for a non-violent misdemeanor offense, it violated his Second Amendment right to keep and bear arms.  The district court summarily denied Armstrong's motion, and Armstrong entered a guilty plea conditioned on his right to appeal the denial of the motion to dismiss.  After a plea hearing, Armstrong's plea was accepted, and he was sentenced to three years' probation, a $2,500 fine and a $100 special assessment.  He timely appealed.

## II.  Discussion

### A.  Maine Assault Conviction as Proper Predicate Offense

Appellant's argument turns on an interpretation of the statutory text of 18 U.S.C. §§ 921(a)(33)(A) and 922(g)(9).  As such, it presents a question of law that we review de novo.  Booker, 644 F.3d at 17, 22.

Pursuant to 18 U.S.C. § 922(g)(9), or the Lautenberg Amendment to the Gun Control Act of 1968 ("Lautenberg Amendment"), it is unlawful "for any person who has been convicted in any court of a misdemeanor crime of domestic violence, to . . . possess in or affecting commerce, any firearm or ammunition."  A "misdemeanor crime of domestic violence" for purposes of § 922(g)(9) has the meaning given the term in § 921(a)(33)(A), namely, an offense that:

> (i) is a misdemeanor under . . . State . . . law; and
>
> (ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of a victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim[.]

Armstrong's predicate offense was a misdemeanor domestic violence assault conviction under Maine statute, Me. Rev. Stat. Ann. tit. 17-A, § 207-A(1)(A).  That statute provides that "[a] person is guilty of domestic violence assault if [that person] violates section 207 and the victim is a family or household member." Section 207, in turn, provides that "[a] person is guilty of assault if [that person] intentionally, knowingly or recklessly causes bodily injury or offensive physical contact to another person." Me. Rev. Stat. Ann. tit. 17-A, § 207(1)(A).  The charging document in this case did not specify whether the nature of the

predicate assault fell under the "bodily injury" or "offensive physical contact" prong of the Maine statute.

In United States v. Nason, this court was asked to examine whether "offensive physical contact" under Maine's assault statute -- the very statute at issue here -- must "necessarily involve[] the use or attempted use of physical force" to serve as a § 922(g)(9) predicate offense. 269 F.3d at 11. We disagreed with Nason's contention that the reference to "physical force" in the definition of a "misdemeanor crime of domestic violence" could not be reconciled with the "offensive physical contact" variant of assault in the Maine statute. Instead, we read the "plain and unambiguous meaning" of the phrase "physical force" to be "power, violence, or pressure directed against another person's body," which was broad enough to encompass the "offensive physical contact" variant of Maine's assault statute. Id. at 16, 20-21. Therefore, we found, § 922(g)(9) applies to the "offensive physical contact" component of the Maine simple assault statute. Id. Specifically, we concluded that "Congress intended the federal law to cover all persons who have been convicted of assaulting domestic partners in circumstances similar to those delineated by both strains of the Maine statute," affirming the conviction and sentence imposed below. Id. at 12.

In this court's recent decision in United States v. Booker, we held that an offense with a mens rea of recklessness may

qualify as a "misdemeanor crime of domestic violence" under § 922(g)(9). 644 F.3d at 21. In making our decision, we reviewed the legislative history and intent behind the Lautenberg Amendment. Id. at 16. We noted Congress's decision to amend the gun law in recognition of "a problem of significant national concern in the combination of domestic violence and guns," and Congress's view of the "existing law as insufficiently protective of its victims." Id. Prior to the Amendment, federal law only prohibited firearm possession by convicted felons. Id. Since Congress concluded that the focus on felony convictions left guns in the hands of a large number of domestic abusers who were convicted of lesser crimes, often due to some combination of plea bargaining, outdated or ineffective laws that treated domestic violence as a lesser offense, and lack of cooperation from victims, it enacted the Amendment to "close th[e] dangerous loophole," id. (quoting 142 Cong. Rec. S10379 (daily ed. Sept. 12, 1996) (statement of Sen. Feinstein)) (internal quotation marks omitted), and "establish[] a policy of zero tolerance when it comes to guns and domestic violence," id. (alteration in original) (quoting 142 Cong. Rec. S8831 (daily ed. July 25, 1996) (statement of Sen. Lautenberg)) (internal quotation marks omitted).

In interpreting the breadth of the definition of "misdemeanor crime of domestic violence" in § 922(g)(9), the court in Booker also rejected analogizing that term to 18 U.S.C. § 16's

definition of "crime of violence," which includes "an offense that has as an element the use . . . of physical force against the person or property of another." Id. § 16(a).  Specifically, this court found that, "[i]n the course of drafting § 921(a)(33)(A), Congress expressly rejected § 16's definition of 'crime of violence,' adopting a definition of 'misdemeanor crime of violence' that was, according to the sponsor of the Lautenberg Amendment, 'probably broader' than the definition of 'crime of violence' in § 16." Booker, 644 F.3d at 19 (quoting 142 Cong. Rec. S11872-01, S11877 (daily ed. Sept. 30, 1996) (statement of Sen. Lautenberg)). We also explicitly stated that "[t]he threshold at which § 922(g)(9) will be triggered (misdemeanor crimes) is, accordingly, lower than the felony threshold set for the [Armed Career Criminal Act]." Id. at 21.  "Whereas the ACCA seeks to protect society at large from a diffuse risk of injury or fatality at the hands of armed, recidivist felons, § 922(g)(9) addresses an acute risk to an identifiable class of victims -- those in a relationship with a perpetrator of domestic violence." Id.  Therefore, this court found "no ambiguity in the phrase 'use . . . of physical force' when read in light of the 'text, structure, history, and purpose' of § 922(g)(9)." Id. (citation omitted).

On the basis of these decisions, the district court summarily denied Armstrong's motion to dismiss.  We cannot but agree, noting that Armstrong's counsel conceded in her motion brief

-8-

below that she had raised the same claims in the district court to no avail in United States v. Booker, 570 F. Supp. 2d 161 (D. Me. 2008), United States v. Wyman, 667 F. Supp. 2d 151 (D. Me. 2009), and United States v. Pettengill, 682 F. Supp. 2d 49 (D. Me. 2010), and, further, that this court has decided Booker and Wyman adversely to her claims (Pettingill remains pending). However, for the sake of thoroughness, we will address the two claims raised by Appellant here.

Appellant concedes that he "engaged in offensive physical contact with his wife." However, he argues that a misdemeanor conviction for that assault cannot constitute a predicate offense for a § 922(g)(9) charge. He asserts first that the language and history of the misdemeanor violence prohibition's incorporation into § 922(g)(9) indicates that Congress never intended the proscription to apply to non-violent battery convictions which encompass non-violent offensive physical contact at common law. A cursory interpretation of §§ 921(a)(33)(A) and 922(g)(9), in light of Nason and Booker, clearly indicates otherwise.

Statutory interpretation begins with the statute's language. United States v. Hartsock, 347 F.3d 1, 5-6 (1st Cir. 2003). "Where the language of the statute is plain and the meaning unambiguous, we will do no more than enforce the statute in accordance with those plain terms." Booker, 644 F.3d at 17 (citing Mass. Museum of Contemporary Art Found., Inc. v. Büchel, 593 F.3d

-9-

38, 50 (1st Cir. 2010)). This court is bound by the Maine Law Court's interpretation and application of state law. Johnson v. United States, 130 S. Ct. 1265, 1269 (2010). We have already found the phrase "misdemeanor crime of domestic violence" to be unambiguous. United States v. Meade, 175 F.3d 215, 221 (1st Cir. 1999). In Nason, we reviewed the Maine Law Court's own interpretation of its simple assault statute's offensive-physical-contact prong, and found that it included "something less than bodily injury" but "more than a mere touching of another." Nason, 269 F.3d at 19 (quoting State v. Pozzuoli, 693 A.2d 745, 747 (Me. 1997)) (internal quotation marks omitted). In Booker, we pointed to Congress's express rejection of including as predicate offenses only such "crime[s] of violence" as are included in 18 U.S.C. § 16, and noted Congress's adoption of "a definition of 'misdemeanor crime of violence' that was, according to the sponsor of the Lautenberg Amendment, 'probably broader' than the definition of 'crime of violence' in § 16." Booker, 644 F.3d at 19 (quoting 142 Cong. Rec. at S11877 (statement of Sen. Lautenberg)). Courts have also found that Congress intended to encompass common-law batteries by including federal misdemeanor batteries in § 921(a)(33)'s definition of misdemeanor crimes of domestic violence. See 18 U.S.C. § 921(a)(33) (listing domestic-violence crimes that are "misdemeanor[s] under Federal . . . law"); see, e.g., United States v. Delis, 558 F.3d 177, 178 (2nd Cir. 2009); United States v.

-10-

Guilbert, 692 F.2d 1340, 1343 (11th Cir. 1982) (citing United States v. Bell, 505 F.2d 539, 540 (7th Cir. 1974)).

Armstrong's attempt to challenge this court's precedent through the Supreme Court's ruling in Johnson v. United States is unavailing. See generally Johnson, 130 S. Ct. 1265. First, Johnson was issued prior to our decision in Booker. Second, Johnson explicitly avoided deciding the question at issue here. Id. at 1273 ("We do not decide that the phrase ['physical force'] has the same meaning in the context of defining a misdemeanor crime of domestic violence [as opposed to a felony]. The issue is not before us, so we do not decide it.").

To conclude, the statute on its face, its legislative history and this court's precedent do not distinguish between "violent" or "non-violent" misdemeanor convictions when they involve the kind of conviction at issue here, and in any case, the court fails to see how a conviction for an offensive touching such as the offensive physical contact for which Armstrong was convicted fails to constitute a predicate offense based on our prior interpretation of § 922(g)(9) predicate offense requirements of "physical force." For these reasons, we reject Appellant's first set of arguments.

Armstrong also raises a due process objection. We review this argument for plain error since Armstrong failed to raise these concerns below. United States v. Matos, 611 F.3d 31, 35 (1st Cir.

2010). There was no error, let alone plain error, in the district court's decision.

First, the issue that Armstrong characterizes as a "fair warning" problem is in fact a rehash of the rule of lenity argument that we squarely rejected in Booker. See 644 F.3d at 21. As we held in that case, there was no ambiguity in the phrase "use . . . of physical force" as of the time of Armstrong's conduct that led to his domestic violence conviction. See id. With no ambiguity, there could be no lack of warning as to the import of § 922(g). Armstrong's argument to the contrary relies on the mistaken premise that Johnson had any effect on the interpretation of what constitutes a "misdemeanor crime of domestic violence."

Second, Armstrong argues that he was denied due process because he did not have an opportunity to prove that the conduct underlying his domestic violence conviction was non-violent. Again, the premise of this argument fails because of its attempt to apply Johnson to the § 922(g) context. Johnson explicitly did not decide anything relating to § 922(g), much less create a new requirement that the government must prove the degree of violence inherent in the underlying domestic misdemeanor conduct of a defendant charged under that section.

Finally, to the extent Armstrong alleges that he was denied due process because of shortcomings in Maine's procedures for adjudicating misdemeanor offenses, the argument fails.

Congress explicitly addressed due process considerations with respect to misdemeanor proceedings by enacting due process protections in § 921(a)(33).  These include requirements that misdemeanants have been (1) "represented by counsel in the case, or knowingly and intelligently waived their right to counsel," 18 U.S.C. § 921(a)(33)(B)(i)(I); and (2) prosecuted in jurisdictions where they were entitled to a jury trial and either received, or "knowingly and intelligently waived their right to," such a trial, id. § 921(a)(33)(B)(i)(II).  Armstrong's convictions were full-scale convictions, he was represented by counsel, and he had additional judicial process available to challenge the factual and legal bases for his conviction by appealing to higher courts.  See, e.g., State v. Keegan, 296 A.2d 483, 485-86 (Me. 1972) (explaining Maine's multi-tiered appeal process for misdemeanor crimes).  Armstrong deliberately waived some of these state court procedures by pleading guilty, and he does not allege that his plea was not knowing or voluntary.  In short, he received all of the due process protection in his misdemeanor conviction that Congress anticipated as being necessary to establish a predicate offense under § 921(a)(33).

For all of the above-cited reasons, the court rejects Appellant's due process-based arguments.

**B.   Second Amendment Claim**

We review constitutional challenges to federal statutes de novo. Booker, 644 F.3d at 22. The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In District of Columbia v. Heller, 554 U.S. 570 (2008), the Supreme Court held that the Second Amendment secured an individual, and not just a collective, right to bear arms. Id. at 576-626. Heller expressly left for "future evaluation" the precise level of scrutiny to be applied to laws that allegedly infringe Second Amendment rights. Id. at 626, 629, 634-35.

In Booker, this court directly addressed the issue of whether, in light of the Supreme Court's recognition in Heller that an individual right to gun ownership is protected by the Second Amendment, convictions under § 922(g)(9) must be found unconstitutional. Booker, 644 F.3d at 22. We found the "animating interest" of § 922(g)(9) to be in "keeping guns away from people who have been proven to engage in violence with those with whom they share a domestically intimate or familial relationship, or who live with them or the like." Id. at 25. We also found a "substantial relationship between § 922(g)(9)'s disqualification of domestic violence misdemeanants from gun ownership and the governmental interest in preventing gun violence in the home" since

-14-

"[s]tatistics bear out the Supreme Court's observation that 'firearms and domestic strife are a potentially deadly combination nationwide.'" Id. (quoting United States v. Hayes, 555 U.S. 415, 427 (2009)). We accordingly held that § 922(g)(9) "substantially promotes an important government interest in preventing domestic gun violence," rejecting the appellants' Second Amendment challenge to the law. Id. at 26.

Armstrong attempts to distinguish this case from Booker by framing the Second Amendment challenge to § 922(g)(9) therein as a "facial" challenge as compared to the instant "as-applied" challenge. Specifically, he contends that, if the relevant misdemeanor conviction is not based on violent behavior, the statute cannot survive intermediate scrutiny as applied because the basis for the proscription is not tailored closely enough to the identified governmental interest to justify the deprivation of a core constitutional right.

As an initial matter, this court has not adopted intermediate scrutiny as the appropriate type of review for a challenge such as Armstrong's. See Booker, 644 F.3d at 25. Nonetheless, under any standard, Armstrong's claim fails.

First, Appellant has already conceded in the court below that his arguments are identical to those made in the lower court in Booker regarding the constitutionality of § 922(g)(9). An as-applied challenge following a failed facial challenge to the

constitutionality of a statute cannot prevail if it is based on "the same type of fact situation that was envisioned by th[e] court when the facial challenge was denied." McGuire v. Reilly, 386 F.3d 45, 61 (1st Cir. 2004); see also Republican Nat. Comm. v. Fed. Election Comm'n, 698 F. Supp. 2d 150, 157 (D. D.C. 2010) ("In general, a plaintiff cannot successfully bring an as-applied challenge to a statutory provision based on the same factual and legal arguments the Supreme Court expressly considered when rejecting a facial challenge to that provision."), aff'd, 130 S. Ct. 3544 (2010). Therefore, since Armstrong attempts to assert an as-applied challenge to the same kind of fact situation envisioned in Booker, it must fail.

Second, Appellant's arguments fail as an "as-applied" challenge because a sufficient nexus exists here between the important government interest and the disqualification of domestic violence misdemeanants like Appellant. As we found above, the statute encompasses the kind of "physical force" that Appellant was convicted of using under the Maine domestic violence assault statute. Further, in targeting such misdemeanants for its proscriptions, Congress stated clear reasons for effectuating the governmental interest through its broadening of the scope of the firearm proscription so as to provide more substantial protections for victims of domestic violence. Specifically, the Lautenberg Amendment was enacted because Congress found the focus on felony

convictions too narrow. Booker, 644 F.3d at 16. By broadening the proscription to misdemeanants like Appellant, Congress sought to "alleviate the danger of intimate homicide by convicted abusers." Id. at 26. Research that we described in Booker linking the presence of a gun in the home of a convicted domestic abuser with increased risk of homicide applies equally here to justify the restraint on Appellant's constitutional rights. We therefore reject Armstrong's challenge to the constitutionality of applying § 922(g)(9) to him.

### III. Conclusion

For the foregoing reasons, we **affirm** the district court.