**UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT**

UNITED STATES OF AMERICA,
Appellee

v.

STEPHEN L. VOISINE,
Defendant-Appellant.

—————————

UNITED STATES OF AMERICA,
Appellee

v.

WILLIAM E. ARMSTRONG,
Defendant-Appellant

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

**SUPPLEMENTAL REPLY BRIEF OF APPELLEE UNITED STATES OF AMERICA**

THOMAS E. DELAHANTY II
United States Attorney

Renée M. Bunker
Assistant U.S. Attorney
District of Maine
100 Middle Street
East Tower, Sixth Floor
Portland, ME  04101
(207) 771-3258

**TABLE OF CONTENTS**

Table of Authorities...........................................ii

Issue Presented................................................1

Relevant Statutes..............................................1

Discussion.....................................................3
    Common-law Battery......................................3
    Castleman's Footnote 8.................................13
    Other § 922(g)(9) Cases................................16
    Carter Opinion........................................20
    Second Amendment Claims...............................22
    Descamps and Continuing Viability of Hayes............26
    Summary...............................................28

Conclusion....................................................29

# TABLE OF AUTHORITIES

## FEDERAL CASES

Aguilar v. Attorney General, 663 F.3d 692 (3d Cir. 2011)...... 15

Descamps v. United States, 133 S.Ct. 2276 (2013)...... 26, 27, 28

Johnson v. United States, 559 U.S. 133 (2010)....... 5, 6, 13, 19

Leocal v. Ashcroft, 543 U.S. 1 (2004)..................... 16, 19

Tollett v. Henderson, 411 U.S. 258 (1973)..................... 23

Tyner v. United States, 103 P. 1057 (Okla. Crim. App. 1909)... 11

United States v. Anderson, 559 F.3d 348 (5th Cir. 2009)....... 15

United States v. Armstrong, 706 F.3d 1 (1st Cir. 2013)........ 22

United States v.  Booker, 644 F.3d 12 (1st Cir. 2011)..... passim

United States v. Bayes, 210 F.3d 64 (1st Cir. 2000)........ 6, 9

United States v. Bridges, 741 F.3d 464 (4th Cir. 2014)....... 23

United States v. Carter, 2014 WL 1688909 (1st Cir. Apr. 30, 2014).......................................... 20, 21, 22

United States v. Castleman, 134 S.Ct. 1405 (2014)........ passim

United States v. Chapa-Garza, 243 F.3d 921 (5th Cir. 2001).... 18

United States v. Curran, 525 F.3d 74 (1st Cir. 2008).......... 23

United States v. Delis, 558 F.3d 177 (2d Cir. 2009)........... 9

United States v. Espinoza, 733 F.3d 568(5th Cir. 2013),... 15, 19

United States v. Freed, 401 U.S. 601 (1971)................... 4

United States v. Gonzalez-Airmont, 268 F.3d 8 (1st Cir. 2001). 23

United States v. Guerrero-Robledo, 565 F.3d 940 (5th Cir. 2009) .................................................. 15

United States v. Hayes, 555 U.S. 415, 427 (2009)...... 24, 26, 27

United States v. Hogan, 722 F.3d 55 (1st Cir. 2013)........... 24

United States v. Howell, 531 F.3d 621 (8th Cir. 2008)..... 16, 17

United States v. Loera, 923 F.2d 725 (9th Cir. 1991)....... 9, 10

United States v. Meade, 175 F.3d 215 (1st Cir. 1999)...... 26, 29

United States v. Meeks, 664 F.3d 1067 (6th Cir. 2012)......... 11

United States v. Rodríguez-Pacheco, 475 F.3d 434 (1st Cir. 2007)
...................................................... 21

United States v. Torres-Villalobos, 487 F.3d 607 (8th Cir. 2007)
...................................................... 17

United States v. Walter, 434 F.3d 30 (1st Cir. 2006).......... 15

United States v. White, 258 F.3d 374 (5th Cir. 2001)...... 17, 18

United States v. Zunie, 444 F.3d 1230 (10th Cir. 2006)........ 10

Wajda v. Holder, 727 F.3d 457(6th Cir. 2013),................. 15

**STATE CASES**

Commonwealth v. Franklin Pierce, 138 Mass. 165 (1884)........ 11

Commonwealth v. Hawkins, 32 N.E. 862 (Mass. 1893)............ 12

Englehardt v. State, 7 So. 154 (Ala. 1890)................. 7, 8

Lynch v. Commonwealth, 109 S.E. 427 (Va. 1921).............. 6, 7

Medley v. State, 47 So. 218 (Ala. 1908)...................... 11

Mercer v. Corbin, 20 N.E. 132 (Ind. 1889)................... 11

State v. Myers, 19 Iowa 517 (1865).......................... 12

State v. Rembert, 658 A.2d 656 (Me. 1995).....................8

**STATUTES**

17-A M.R.S.A. § 35.................................. 2, 10, 11, 12

17-A M.R.S.A. § 207..................................................... 2

18 U.S.C. § 16.................................................... 14, 15

18 U.S.C. § 113........................................................ 9

18 U.S.C. § 921.................................... 2, 13, 19, 26, 27

18 U.S.C. § 922................................................. passim

**RULES**

USSG § 2L1.2.......................................................... 13

**OTHER AUTHORITIES**

3 Blackston, <u>Commentaries on the Laws of England</u>, 120 (Univ. of
    Chicago Press ed. 1979 (1768)................................. 6

6 C.J.S. § 85......................................................... 6

142 Cong. Rec. S8831-06 (July 25, 1996) (Statement of Senator
    Lautenberg)...................................................... 24, 25

142 Cong. Rec. S8831-06 (Sept. 30, 1996) (Statement of Senator
    Lautenberg)...................................................... 25

<u>Commentaries on the Laws of England</u>, 120 (Univ. of Chicago Press
    ed. 1979 (1768).................................................. 6

Model Penal Code § 2.02.............................................. 10

<u>Restatement (Second) of Torts</u>...................................... 8

Rollin M. Perkins, <u>Non-Homicide Offenses Against the Person</u>,
    26 B.U. L.Rev. 119 (1946)........................................ 6

Wayne R. LaFave, <u>Substantive Criminal Law</u>, § 16.2c(2) (2d ed.
    2003)............................................................. 6

<u>Wharton's Criminal Law</u> § 178 (C. Torcia 14th ed. 1979)........ 10

**WHETHER THE COURT SHOULD, CONSISTENT WITH THE HOLDING AND REASONING IN <u>CASTLEMAN</u> AND SOUND CIRCUIT PRECEDENT, CONCLUDE THAT A CONVICTION UNDER MAINE'S SIMPLE ASSAULT STATUTE CONTINUES TO QUALIFY CATEGORICALLY AS A MISDEMEANOR CRIME OF DOMESTIC VIOLENCE FOR PURPOSES OF 18 U.S.C. § 922(g)(9).**

For the reasons stated in the Government's opening supplemental brief and below, the answer is yes. The Supreme Court's holding and reasoning in <u>United States v. Castleman</u>, 134 S.Ct. 1405 (2014), support concluding that a conviction under Maine's assault statute for what is necessarily a completed common-law battery continues to qualify categorically as a misdemeanor crime of domestic violence for purposes of 18 U.S.C. § 922(g)(9), even if committed recklessly. None of Appellants' arguments in their opening supplemental brief warrants a contrary conclusion.[1]

**RELEVANT STATUTES**

Title 18, U.S.C. § 922(g)(9) makes it "unlawful for any person...who has been convicted in any court of a misdemeanor crime of domestic violence, to...possess in or affecting commerce, any firearm or ammunition...." The term "'misdemeanor crime of domestic violence' means an offense that-

---

[1]The Government incorporates herein without repetition the Statement of Facts section of its opening supplemental brief.

> **(i)** is a misdemeanor under Federal, State,
> or Tribal law; and
> **(ii)** has, as an element, the use or
> attempted use of physical force, or the
> threatened use of a deadly weapon, committed
> by a current or former spouse,... or...by a
> person who is cohabiting with or has
> cohabited with the victim as a spouse...or
> by a person similarly situated to a
> spouse....

18 U.S.C. § 921(a)(33)(A)(i)-(ii).

Maine law renders one guilty of assault if "[t]he person intentionally, knowingly or recklessly causes bodily injury or offensive physical contact to another person." 17-A M.R.S.A. § 207(1)(A). Under Maine law, "A person acts recklessly with respect to a result of the person's conduct when the person consciously disregards a risk that the person's conduct will cause such a result." Id., § 35(3)(A). The statute adds that:

> For purposes of this subsection, the
> disregard of the risk, when viewed in the
> light of the nature and purpose of the
> person's conduct and the circumstances known
> to the person, must involve a gross
> deviation from the standard of conduct that
> a reasonable and prudent person would
> observe in the same situation.

Id., § 35(3)(C)(Sept. 2007-present).[2]

---

[2]The only difference between this version of § 35 and the 2004 statute relevant to Voisine's case is the use of gender-neutral terms here.

**DISCUSSION**

In its opening supplemental brief, the Government provided seven reasons why the Court should conclude that a conviction under Maine's assault statute for a completed common-law battery continues to qualify categorically as misdemeanor crime of domestic violence for § 922(g)(9) purposes.  Without repeating all of those arguments here, the Government maintains that Appellants' argument that an intentional mens rea is required stems from erroneous analogies to other statutes with different purposes than § 922(g)(9), in contrast to Castleman's analysis and holding.  Appellants' newly-raised constitutional claims are outside the Court's supplemental briefing order and also waived.

**Common-law Battery**

The parties agree that the import of Castleman is that for § 922(g)(9) purposes, Congress intended to incorporate the common-law meaning of battery when defining "misdemeanor crime of domestic violence." ASB:9, 17.[3]  The parties also acknowledge, as Castleman explained, that "absent other indication, Congress intends to incorporate the well-settled meaning of the common-law term it uses." 134 S.Ct. at 1410 (internal quotation marks

---

[3] "ASB:[pg#]" refers to Appellants' opening supplemental brief and "GSB:[pg#]" refers to the Government's opening supplemental brief.  Page citations for those briefs are to the briefs' pagination, not to the ECF stamped page headers.

omitted)(ASB:17). <u>See also</u> <u>United States v. Freed</u>, 401 U.S. 601, 607-08 (1971)("Where Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken....").

The Government has argued, with citation to a wealth of authority, that common-law battery encompassed intentional, knowing and reckless conduct, and sometimes even negligence. GSB:19-23. Appellants first contend that by incorporating common-law battery into § 922(g)(9), <u>Castleman</u> "adopted a very special meaning for the term 'use of physical force'" that is distinct from "the common usage meaning" this Court relied upon in <u>United States v. Booker</u>, 644 F.3d 12, 18 (1st Cir. 2011), to conclude that a conviction under Maine's statute for reckless battery qualifies as a § 922(g)(9) predicate. ASB:17. That claim is erroneous. In <u>Booker</u>, the Court concluded that, based on the statute's text and legislative history, "convictions under generic assault and battery statutes may qualify as misdemeanor crimes of domestic violence under § 922(g)(9)." 644 F.3d at 16 (internal quotation marks and alterations omitted). That holding is in perfect harmony with <u>Castleman</u>'s explanation that, "because perpetrators of domestic violence are 'routinely

4

prosecuted under generally applicable assault and battery laws,'
it makes sense for Congress to have classified as a 'misdemeanor
crime of domestic violence' the type of conduct that supports a
common-law battery conviction." 134 S.Ct. at 1411 (quoting
United States v. Hayes, 555 U.S.415, 427 (2009)).

For § 922(g)(9) purposes, the Castleman Court did, as
Appellants suggest (ASB:17), incorporate the "specialized legal
usage of the word 'force,'" see Johnson v. United States, 559
U.S. 133, 139 (2010), that was encompassed within common-law
battery. 134 S.Ct. at 1410. The Court did so because, for
misdemeanor domestic violence purposes, "the common-law meaning
of 'force' fits perfectly." Id. The same is true for the
common-law mens rea of recklessness that also fits perfectly.
Neither Castleman nor Johnson held that common-law battery
necessarily required "intentional application of unlawful
force," as Appellants suggest. ASB:17.

To be sure, in Johnson, the Court described common-law
battery as the "intentional application of unlawful force
against the person of another." 559 U.S. at 139 (ASB:17-18).
The Court did not, however, rule that reckless application of
unlawful force was not a common-law battery. As LaFave
explains, while some courts have spoken of criminal batteries as
necessarily involving "intent" to injure, they have also treated

reckless or criminally negligent conduct as supplying the necessary intent. See 2 Wayne R. LaFave, Substantive Criminal Law, § 16.2(c)(2), at 556 & n.32 (2d ed. 2003); see also Rollin M. Perkins, Non-Homicide Offenses Against the Person, 26 B.U. L.Rev. 119, 125-26 (1946); 6A C.J.S. § 85 (describing battery as a general-intent crime requiring no specific intent, but an intentional act; however, "[w]anton and reckless conduct may substitute for the intentional conduct element necessary for a battery").

As Johnson's approvingly-cited authority explained, at common law, "The least touching of another's person willfully, or in anger, is a battery...." 3 Blackstone, Commentaries on the Laws of England, 120 (Univ. of Chicago Press ed. 1979)(1768)(as cited in United States v. Bayes, 210 F.3d 64, 68 (1st Cir. 2000))(internal alterations omitted and emphasis added here). Seizing upon another cited authority within Johnson's common-law discussion, 559 U.S. at 139, Appellants contend that Lynch v. Commonwealth, 109 S.E. 427 (Va. 1921), supports their argument that common-law battery required an intentional mens rea. ASB:18. Lynch, however, bolsters the Government's argument that a mens rea akin to a willful act is sufficient.

As the Lynch court explained: "'Any touching by one of the person or clothes of another in rudeness or in anger is an

6

assault and battery.'" 109 S.E. at 428 (quoting <u>Englehardt v.</u>
<u>State</u>, 7 So. 154 (Ala. 1890))(emphasis added).  The touching,
however, must be done "willfully or in anger...." <u>Id.</u> (internal
quotation marks and citation omitted).  "[W]illfully clearly
implies that those elements, <u>as well as anger</u>, may become a test
of the offense." <u>Id.</u> (internal quotation marks omitted)(emphasis
added).

    <u>Lynch</u>'s quoted authority is also instructive.  In
<u>Englehardt</u>, the court was reviewing an appeal from an assault
and battery conviction stemming from defendant's discharge of a
pistol during a scuffle. 7 So. at 154.  The defense was that the
perpetrator was "'crazy drunk,'" but as the court explained:

> The voluntary drunkenness of the defendant,
> although he may have been so intoxicated at
> the time as to be unconscious of what he was
> doing, was no excuse for the crime of
> assault and battery....The language of Baron
> PARKE, in Rex v. Thomas,... (1837) on this
> subject has been commonly approved, where he
> observed that if a man makes himself
> voluntarily drunk, that is no excuse for any
> crime he may commit whilst he is so.  He
> must take the consequence of his own
> voluntary act, or most crimes would
> otherwise be unpunished.

<u>Id.</u> at 155 (internal quotation marks omitted).  The court added
that drunkenness "can...never legally excuse or justify an
assault and battery, the condition of the criminal's mind not

being an element of this particular offense." Id.; see also
GSB:20-21.

Appellants' citation to State v. Rembert, 658 A.2d 656 (Me.
1995)(ASB:18-19), is also not dispositive of this issue.  There,
the court was focused solely on the degree of force required for
robbery and an offensive physical contact under Maine's assault
statute to determine whether assault was a lesser-included
offense within robbery. Id. at 657-58.  The court had no reason
to delve into the scope of mens reas that might also be
encompassed within common-law battery.  As Appellants highlight
(ASB:18), in addressing the force issue, the court considered
that the Restatement (Second) of Torts defined civil battery as
including "[u]permitted and intentional contacts with anything
so connected with the body...." Id. at 658 (quoting Restatement,
§ 18, cmt. c (1964)).

Neither that consideration in Rembert nor the fact that the
Restatement for intentional torts cites an element of
intentionality mean, as Appellants claim (ASB:18-19), that
Maine's inclusion of a recklessly mens rea in its assault and
battery statute renders the statute broader than common-law
battery.  To the contrary, ample authority supports concluding
that Maine's statutes (defining a completed battery and the
criminal degree of recklessness that is the minimum required)

fit comfortably within the well-accepted meaning of common-law battery.

As the Second Circuit explained in United States v. Delis, 558 F.3d 177, 180-82 (2d Cir. 2009), in concluding that the common-law meaning of battery was incorporated into the federal assault statute:[4] "Common-law battery did not require any specific intent either to injure or to touch offensively, but rather only a more general intent to commit the unlawful act or, indeed, mere recklessness or criminal negligence." See also Bayes, 210 F.3d at 68 (Common-law battery "did not require proof that the defendant intended to injure another or to threaten her with harm. The slightest willful offensive touching of another constitute[d] a battery...regardless of whether the defendant harbor[ed] an intent to do physical harm.")(internal quotation marks omitted).

The Ninth Circuit similarly explained in United States v. Loera 923 F.2d 725, 728 (9th Cir. 1991), that "'willful' as used at common law as an element of a general intent crime refers to a volitional act." The court added: "If [the defendant] could have refrained, the act is voluntary; but, if he was impelled by

---

[4]See 18 U.S.C. § 113(a)(5). Section 922(g)(9)'s inclusion of federal misdemeanors within its definition of misdemeanor crime of domestic violence necessarily includes what courts have interpreted as the common-law assault codified in § 113(a)(5)(GSB:20-22).

some irresistible force, it is involuntary." Id. (citations and internal quotation marks omitted). See also id. ("At common law a criminal battery was shown if the defendant's conduct was reckless. F. Wharton, Wharton's Criminal Law § 178 at 296 (C. Torcia 14th ed. 1979)"); United States v. Zunie, 444 F.3d 1230, 1234 (10th Cir. 2006)(common-law, general-intent crimes "encompass[] crimes committed with purpose, knowledge, or recklessness. See Model Penal Code § 2.02(3)").

The parties appear to agree, here, that Castleman's holding means that a common-law battery, as incorporated into § 922(g)(9) for domestic-violence purposes includes "a knowing or willfull" mens rea element. ASB:19. We depart ways then only on whether such a battery also encompasses recklessness as a satisfactory mens rea. As explained above and in the Government's initial supplemental brief, it does. In assessing the volitional scale, recklessness lies rather close to "knowingly" and is arguably part and parcel of "willfully." Recklessly is more akin to deliberately or knowingly, where it requires, under Maine law, that the perpetrator "consciously disregards," i.e., knowingly or deliberately disregards, a risk that the conduct will cause the prohibited result. Title 17-A M.R.S.A. § 35(3).

The conscious disregard is "viewed in light of the nature
and purpose of the person's conduct and the circumstances known
to the person." Id. (emphasis added). See also United States v.
Meeks, 664 F.3d 1067, 1070-72 (6th Cir. 2012)(wanton conduct,
i.e., conscious disregard, qualified as felony crime of violence
under career-offender guideline); Tyner v. United States, 103 P.
1057, 1060 (Okla. Crim. App. 1909)("The law infers guilty
intention from reckless conduct; and, where recklessness is of
such a character as to justify this inference, it is the same as
if the defendant had deliberately intended the act committed.")
(internal quotation marks omitted); id. ("Reckless shooting into
a crowd is an assault, and an assault on several
indiscriminately is an assault on each individual")(internal
quotation marks omitted); Medley v. State, 47 So. 218, 220 (Ala.
1908)(holding that jury could convict on theory that defendant
was "grossly negligent in the handling of the rifle and that its
discharge was the result of such negligent act"); Mercer v.
Corbin, 20 N.E. 132, 132-33 (Ind. 1889) (collecting cases for
proposition that, although negligence would not suffice, common-
law assault and battery did not require specific intent to cause
the harm); id. at 133 (a showing of reckless conduct with
conscious disregard of consequences was sufficient to establish
that the act was "willful or intentional"); Commonwealth v.

<u>Franklin Pierce</u>, 138 Mass. 165, 180 (1884); <u>State v. Myers</u>, 19 Iowa 517 (1865)("Recklessly shooting into a crowd, and wounding some[]one, not intended, is criminal.").

In <u>Commonwealth v. Hawkins</u>, 32 N.E. 862, 863 (Mass. 1893), the court explained the general rule at common law that "the defendant cannot be convicted unless a criminal intent is shown, but it is not necessary that he should have intended the particular wrong which resulted from his act."  That case involved discharge of a firearm and the court explained that, for, *i.e.*, homicide, the well-established rule was "that one who wantonly, or in a reckless or grossly negligent manner, does that which results in the death...is guilty of manslaughter...." <u>Id.</u>  Where the victim "survived the injury, the same principle now requires a conviction of assault and battery." <u>Id.</u>  All that was required was a showing of "an intentional doing of an action which, by reason of its wanton or grossly negligent character, exposes another to...injury...." <u>Id.</u>  Maine law renders one guilty of reckless assault not based on merely negligent conduct, but based on "the disregard of the risk, when viewed in the light of the nature <u>and purpose</u> of the person's conduct and the circumstances <u>known</u> to the person," 17-A M.R.S.A. § 35(3)(C) (emphasis added).  The Court should therefore readily conclude that a conviction under Maine's statutes fits comfortably within

12

the meaning of common-law battery that Castleman held applies to
§ 922(g)(9).

## Castleman's Footnote 8

Appellants read Castleman's footnote 8 (134 S.Ct. at 1414
n.8) as support for their argument that this Circuit's holding
in Booker, 644 F.3d at 21, "that 'use of physical force' may be
committed through reckless conduct conflicts with that of every
other court to have considered the intent element of this
language...." ASB:19 (emphasis added). That argument over-reads
footnote 8 and ignores the entire reasoning of Castleman. As
explained in the Government's supplemental brief (GSB:30-34),
the only opinion in n.8 that even addresses "this language"
(ASB:19)--meaning the statute, text and context in issue here
(§§ 922(g)(9) and 921(a)(33)), is Booker.

All but one of the 10 cases cited in n.8 address felony
crimes of violence for purposes of the sentencing guideline
enhancement in USSG § 2L1.2 (GSB:31 n.15) or the requisite mens
rea for an aggravated felony pursuant to immigration statutes
that directly resort to 18 U.S.C. § 16's definition of violence
simplicter (GSB:31 n.16). As Castleman made clear, comparing
the elements of felony crimes of violence and violent felonies
to those of a misdemeanor crime of domestic violence is
erroneous. 134 S.Ct. at 1410; id. at 1411. See also Johnson, 559

13

U.S. at 139-41 (emphasizing the difference between assessing scope of elements for "a common-law <u>misdemeanor</u>" and those for a "'violent felony'"). Appellants fail even to acknowledge that this case entails the meaning of "use of physical force" for purposes of § 922(g)(9), and a misdemeanor battery in particular, rather than the cases they highlight that address predicate felonies. ASB:19-23.

As Appellants concede, most of the cases in note 8 interpret whether predicate crimes qualified as aggravated felonies by the immigration statutes' explicit resort to § 16 to define crime of violence. ASB:19. As <u>Castleman</u> explained, however, the meaning of "misdemeanor crime of domestic violence" and "use of physical force" for the more distinct purposes of § 922(g)(9) is "broader than that which constitutes 'violence' *simpliciter*" as defined in § 16. 134 S.Ct. at 1411 n.4. With that sound explanation from the Supreme Court, there is no logical reason not to conclude that a common-law battery encompassing a recklessness mens rea--as common-law battery was routinely characterized--"fits perfectly" within the meaning of "use of physical force" for purposes of § 922(g)(9). <u>See</u> <u>Castleman</u>, 134 S.Ct. at 1410.

Appellants' assertion that "[t]he term 'crime of violence' has been incorporated in a variety of criminal and civil

14

statutes, which <u>all</u> then refer back to § 16" (ASB:19)(emphasis added) is also erroneous.  As <u>Castleman</u> explained, when defining the meaning of "use of physical force" for § 922(g)(9) purposes, Congress easily could have chosen to resort to a cross-reference to § 16 as it did for, *i.e.*, the immigration statutes. 134 S.Ct. at 1411 n.4 & 1412 n.6.  "That it did not do so here suggests, if anything, that it did not mean to." <u>Id.</u> at n.6.

Moreover, at least three of the circuits cited within <u>Castleman</u>'s note 8 have held that certain crimes with a recklessness mens rea can even qualify as felony crimes of violence. <u>See</u> <u>United States v. Espinoza</u>, 733 F.3d 568, 572-74 (5th Cir. 2013), <u>cert.</u> <u>denied</u>, 134 S.Ct. 1936 (2014); <u>Wajda v.</u> <u>Holder</u>, 727 F.3d 457, 458, 462-64 (6th Cir. 2013), <u>cert.</u> <u>denied</u>, 134 S.Ct. 1310 (Feb. 24, 2014); <u>Aguilar v. Attorney General</u>, 663 F.3d 692, 693-98 (3d Cir. 2011); <u>United States v. Guerrero-Robledo</u>, 565 F.3d 940, 947 (5th Cir. 2009); <u>United States v.</u> <u>Anderson</u>, 559 F.3d 348, 355-56 (5th Cir. 2009). <u>See also</u> <u>United States v. Walter</u>, 434 F.3d 30, 39-40 (1st Cir. 2006).  Thus, <u>Booker</u> can hardly be described as in conflict with every other circuit, especially in the context of whether § 922(g)(9) in particular encompasses a recklessness mens rea, given that neither <u>Castleman</u>'s nor Appellants' cited authority have decided that question.

### Other § 922(g)(9) Cases

Appellants appear to suggest that other circuits have either imported reasoning from <u>Leocal v. Ashcroft</u>, 543 U.S. 1 (2004), into analyzing the mens rea required for § 922(g)(9) or relied on pre-<u>Leocal</u> similar reasoning to conclude that predicate offenses with a recklessness mens rea do not qualify as misdemeanor crimes of domestic violence. ASB:23-24. This argument and Appellants' reliance upon their cited authority for it are fundamentally misplaced.

Contrary to Appellants' contention, the court in <u>United States v. Howell</u>, 531 F.3d 621 (8th Cir. 2008), did not hold that the Missouri conviction in issue there failed to qualify as a § 922(g)(9) predicate "because the statute at issue involved reckless conduct." ASB:23. The subsection of the Missouri statute under which Howell was convicted provided that he was guilty of third-degree misdemeanor assault if "[h]e recklessly engages in conduct which creates a grave risk of death or serious bodily injury to another person...." 531 F.3d at 623. The problem with the statute the court addressed was not the "recklessly" mens rea; it was that the provision applied "to innumerable factual situations" which, in the ordinary case, did not necessarily involve use of force at all. <u>Id.</u> at 624. The subsection in issue merely required "conduct which creates a

grave risk of death or serious injury...." Id.  Even if that

subsection had an intentional mens rea, intentionally engaging

in conduct that creates a risk of harm to others does not

necessarily, unlike the completed batteries in issue here,

require use of physical force against another.

Perhaps, as Appellants speculate, the reasoning in Howell

was "circumscribed" by United States v. Torres-Villalobos, 487

F.3d 607 (8th Cir. 2007)(cited in Castleman's note 8 and at

ASB:23), although the Howell court never mentioned Torres-

Villabos or the immigration statutes and resort to § 16 to

assess the prospective aggravated felony in issue there.  As

explained above, however, and as Castleman confirmed, neither

the immigration statutes nor § 16 would have been relevant to

"circumscrib[ing]" the elements of "misdemeanor crime of

domestic violence" for § 922(g)(9) purposes. 134 S.Ct. at 1411 &

n.4, 1412 n.6.

Also contrary to Appellants' contention, the court in

United States v. White, 258 F.3d 374 (5th Cir. 2001), did not

exclude as a § 922(g)(9) predicate the Texas conviction in issue

there based on a "finding that reckless conduct...does not meet

[the] definition of 'use or attempted use of physical force'

for" § 922(g)(9) purposes on the ground that "both 'use' and

'attempted use' indicate purposeful and intentional, not

reckless conduct." ASB:23-24. That assertion misconstrues White.

The relevant subsection of the Texas statute rendered it an offense if the person "recklessly engages in conduct that places another in imminent danger or serious bodily injury." 258 F.3d at 382. The problem was not the mens rea; it was that, unlike for the completed batteries in issue here, the Texas crime "does not require that the perpetrator actually 'use' 'physical force' against another (or use it at all)." Id. at 383. The mens rea discussion that followed addressed whether this predicate conviction might qualify as an "'attempted use of physical force'" and whether a separate terrorist-threat conviction qualified. Id. at 382-84.

Perhaps, as Appellants intimate, the White panel was influenced by United States v. Chapa-Garza, 243 F.3d 921 (5th Cir. 2001)(cited in Castleman's note 8 and at ASB:24), although the White court never mentioned Chapa-Garza or the immigration statutes and resort to § 16 to assess the prospective aggravated felony in issue there. As explained in Castleman, however, neither the immigration statutes nor § 16 would have been relevant to discerning the elements of "misdemeanor crime of domestic violence" and the meaning of "use

of physical force" for § 922(g)(9) purposes. 134 S.Ct. at 1411 &
n.4, 1412 n.6.[5]

Appellants are unequivocally wrong when they assert that
Castleman, somehow as an extension from the above-discussed
opinions and Leocal, "incorporated the common-law requirement
for intentional conduct" into §§ 922(g)(9) and 921(a)(33).
ASB:24.  Just as Johnson, 559 U.S. at 144, declined to decide
the degree-of-force issue as relevant to § 922(g)(9) rather than
the ACCA, the Castleman Court explicitly declined to decide the
mens rea issue that is now before this Court. 134 S.Ct. at 1414.
Those who concluded, by extending dicta in Johnson, that the
type of force required for misdemeanor crimes of domestic
violence under § 922(g)(9) was the same as that required for
violent felonies were found to have done so erroneously, as
Appellants did here and the Sixth Circuit did in Castleman. See
134 S.Ct. at 1409-12 & n.4.  That should give one pause, in
light of the principles of *stare decisis* and the reasoning of
Castleman, in relying upon dicta in a footnote in Castleman and
opinions addressing felonies and different statutes to conclude

---

[5]Nor has the Fifth Circuit adopted the blanket rule against
reliance upon offenses with a recklessness mens rea as crimes of
violence that Appellants suggest. ASB:23-24. See United States
v. Espinoza, 733 F.3d 568, 572-74 (5th Cir. 2013), cert. denied,
134 S.Ct. 1936 (2014)(holding that conviction for recklessly
causing bodily injury in context of domestic-violence assault
qualified as ACCA predicate).

that convictions based on reckless batteries against domestic partners, children or other qualifying victims no longer qualify categorically as § 922(g)(9) predicates.[6]

### **Carter** Opinion

The panel in this Court's recent opinion in United States v. Carter, 2014 WL 1688909, at *8 (1st Cir. Apr. 30, 2014), appears aptly to have paused in this sense and did not reach the conclusion regarding a recklessness mens rea that Appellants urge.  As explained in the Government's opening supplemental brief (GSB:35-37), Carter, therefore, does not warrant concluding that a conviction under Maine's battery statute for reckless domestic abuse no longer categorically qualifies as a § 922(g)(9) predicate.  Contrary to Appellants' claim, "the panel" in Carter did not "implicitly f[i]nd that a prior conviction based on reckless conduct does not meet the statutory definition of a misdemeanor crime of domestic violence." ASB:16. That non-existent so-called "holding" that Appellants discern,

---

[6] The parties agree that, if the Court were to resort to the modified categorical approach and review approved state-court documents, they would not provide sufficient evidence to discern under which prong of Maine's statute Appellants were convicted. ASB:24-26.  The result is that the Court must assume, as the parties have throughout this litigation, that Appellants were convicted under Maine law for recklessly causing offensive physical contact. ASB:26.  The Government's argument remains that that the Court need not, and should not, resort to the modified categorical approach.

therefore, need not and should not be made "explicit" (ASB:16) here.

The Carter opinion, 2014 WL 1688909, at *8, correctly acknowledged that Castleman did not decide the mens rea issue now before this Court. The Government maintains, therefore, that the remand in Carter, 2014 WL 1688909, at *11, to supplement the record for possible application of the modified categorical approach was unnecessary. Accordingly, *stare decisis* should bind the Court to adhere to its earlier sound holding in Booker. See United States v. Rodríguez-Pacheco, 475 F.3d 434, 441 (1st Cir. 2007)(appellate court panel is normally bound to follow an earlier, closely-on-point panel decision).

Given that, contrary to Appellants' claims (ASB:15-16), Carter did not decide the mens rea issue, 2014 WL 1688909, at *9 & n.11, that opinion by no means forecloses this panel from deciding that a recklessness mens rea continues to qualify categorically as a § 922(g)(9) predicate after Castleman. For all of the above reasons and those in the Government's opening supplemental brief, that is precisely what this Court should hold.

## Second Amendment Claims

Appellants have, for understandable "procedural purposes," repeated without reciting their previously-raised, litigated and preserved Second Amendment claim "so that they may not be considered waived...." ASB:27-28. <u>See United States v. Armstrong</u>, 706 F.3d 1, 7-8 (1st Cir. 2013)(rejecting Second Amendment claims raised regarding § 922(g)(9)); <u>Booker</u>, 644 F.3d at 25-26 (same). The Government adds that Appellants' previously-litigated and decided Second Amendment claims were also strikingly similar to those raised by Appellants' counsel's colleague in <u>Carter</u>, 2014 WL 1688909, at *3-*4. As the <u>Carter</u> opinion explained: "The Supreme Court's vacation of our judgment in <u>Armstrong</u> for reconsideration in light of <u>Castleman</u> does nothing for Carter's argument" on the Second Amendment issue. 2014 WL 1688909, at *4.

Because Castleman had not, beyond a single paragraph, challenged § 922(g)(9)'s constitutionality, the Court declined to "indulge" his constitutional concerns. 134 S.Ct. at 1416. "Therefore," as the <u>Carter</u> opinion stated, "<u>Castleman</u> does not impact our reasoning in <u>Armstrong</u> nor our holding in <u>Booker</u> with respect to the constitutionality of § 922(g)(9)." 2014 WL 1688909, at *4. Such Second Amendment claims therefore "remain[] foreclosed by binding precedent in this circuit." <u>Id.</u>

That should end the Court's consideration of any Second
Amendment claims asserted in Appellants' supplemental brief.
Appellants, however, have endeavored to raise new claims far
afield of the Court's order for supplemental briefing in light
of Castleman.  Attempting to characterize one of the "new
challenges" as "a gloss" on Appellants' earlier Second Amendment
claims, Appellants argue that: "If control is the *sine qua non*
of domestic violence, then an unintentional, if reckless, act
becomes too attenuated from the underlying identified cause to
withstand constitutional scrutiny." ASB:28-29.  This claim is
more like a full-body paint job than mere "gloss" on earlier,
preserved claims.

Nothing precluded Appellants from raising this claim in
their motions before the district court and attempting to
preserve it as part of their conditional guilty pleas.  They did
not do so and the claim is therefore waived. See United States
v. Curran, 525 F.3d 74, 83-84 (1st Cir. 2008)(waiver by failure
to raise below); Tollett v. Henderson, 411 U.S. 258, 267
(1973)(guilty plea waives independent claims regarding
deprivation of constitutional rights); United States v. Bridges,
741 F.3d 464, 467 n.3 (4th Cir. 2014)(appellant's claim was
outside scope of his conditional guilty plea and thus waived);
United States v. Gonzalez-Airmont, 268 F.3d 8, 12-13 (1st Cir.

2001).  Nor were Appellants precluded from raising this claim in
their opening or reply briefs, except that counsel might have
considered the issue waived if not forfeited.  The issue is thus
waived on those grounds as well.  United States v. Hogan, 722
F.3d 55, 61 (1st Cir. 2013).

Moreover, Appellants' so-called "control" issue ignores the
broader purpose of § 922(g)(9).  That purpose was not to curtail
perpetrators' efforts to "control" their victims--whether
through intentional or reckless battering.  Rather, it was to
protect victims of domestic abuse from the dangerous and
potentially deadly combination of firearms and domestic strife.
United States v. Hayes, 555 U.S. 415, 427 (2009).

Indeed, legislative history demonstrates that Congress
intended, and constitutionally so, to prevent unnecessary deaths
caused by the deadly combination of firearms and an out-of-
control, i.e., reckless, domestic abuser.  As Senator Lautenberg
explained: "It is not just beatings and other types of
punishment.  Put another way, two-thirds of domestic violence
murders involve firearms.  Many of these murders never would
have happened but for the presence of a gun." 142 Cong. Rec.
S8831-06 (July 25, 1996)(statement of Senator Lautenberg).  The
senator added that statistics at that time showed that "2,000
American children are killed each year from abuse inflicted by a

parent or a caretaker." Id. Section 922(g)(9) was designed to "keep[] guns away from violent individuals who threaten their own families, people who show they cannot control themselves and are prone to fits of violent rage, directed, unbelievably enough, against their own loved ones." Id. (emphasis added).

Senator Lautenberg later described a scenario § 922(g)(9) would hopefully de-escalate: one where the perpetrator perhaps "lose[s] his cool at work, or with the boys," goes home and argues with his wife; and:

> As arguments often do, it will escalate, and this time, as before, it will get out of control. As their children huddle in fear, the anger will get physical, and almost without knowing what he is doing, with one hand he will strike his wife and with the other hand he will reach for the gun he keeps in his drawer. In an instant their world will change. And this woman...will die or be severely wounded.

142 Cong. Rec. S11872-01 (Sept. 30, 1996)(statement of Senator Lautenberg)(emphasis added). Accordingly, whether one examines the issue from the "telescope" (ASB:28) of the out-of-control, reckless domestic abuser or from the scope of the barrel of a gun pointing at the abused victim, the Court should reject Appellants' newly-raised "control" claim as waived, beyond the scope of the Court's briefing order and meritless.

## **Descamps** and Continuing Viability of **Hayes**

Appellants' second new claim raised for the first time in their post-Castleman brief is also waived for all of the reasons the so-called "control" issue is not ripe for review. This argument is also far afield from the Court's supplemental briefing order regarding Castleman and meritless.

Appellants appear to contend (ASB:30-33) that the Supreme Court's holding in Descamps v. United States, 133 S.Ct. 2276 (2013), essentially overruled its holding in United States v. Hayes, 555 U.S. 415, 418 (2009), "that the domestic relationship" element in § 922(g)(9) "must be established beyond a reasonable doubt in a § 922(g)(9) firearms possession prosecution, [but] need not be a defining element of the predicate [state] offense." This argument conflates the very different issues presented in Descamps and Hayes and also the different permissible means for establishing the elements of a predicate offense for sentencing-enhancement purposes and those for establishing the elements required to be proven beyond a reasonable doubt in a federal trial.

Hayes resolved a circuit split, again, in alignment with this Court's precedent, see United States v. Meade, 175 F.3d 215, 218-21 (1st Cir. 1999)(cited favorably in Hayes), on the question whether the domestic-relationship requirement described

in § 921(a)(33) needed to be an element of the predicate offense
or was an element of the federal § 922(g)(9) crime. 555 U.S.
at 420-22 & n.3. The Court held that the "Government must prove
beyond a reasonable doubt that the victim of the predicate
offense was...related to the defendant" in one of the ways
specified in § 921(a)(33)(A). Id. at 426. However, the Court
held, "that relationship,...need not be denominated an element
of the predicate offense." Id.

In Descamps, the Court held "that sentencing courts may not
apply the modified categorical approach when the crime of which
the defendant was convicted has a single, indivisible set of
elements. 133 S.Ct. at 2282. The Court said nothing about
needing to apply either a categorical or modified categorical
approach to establish every element of a federal crime, as
Appellants suggest here. ASB:30-31. There is therefore no
"conflict" between Descamps and Hayes. ASB:30-31. Nor does
Hayes "allow[] an essential element of a prior conviction to be
proven in a later prosecution." ASB:31. The domestic-
relationship element is not an essential element of the prior
conviction, as Hayes held. 555 U.S. at 421, 426.

True, a defendant cannot be "'convicted' of the requisite
crime until a jury so finds." ASB:32. But that requisite crime
here is § 922(g)(9) and a misdemeanor predicate offense that has

as an element the "use of physical force" against another.  Once
Appellants were convicted of such an offense, here, in Maine for
their completed batteries, Appellants' firearm possession was no
less illegal before their § 922(g)(9) charges were lodged than
afterwards. ASB:32.

There is no Ex Post Facto Clause problem (ASB:32) because
§ 922(g)(9) was enacted in 1996 and Appellants' § 922(g)(9)
charges were lodged over a decade later.  Nor is there anything
unusual about requiring elements of a federal offense to be
proved beyond a reasonable doubt to a jury <u>after</u> such charges
are lodged. ASB:32.  That requirement, here, for the domestic-
relationship element, is also what negates the Sixth Amendment
concerns about sentencing courts conducting their own fact
finding for purposes of enhancing a statutory maximum penalty
that underpinned the reasoning and holding in <u>Descamps</u>. 133
S.Ct. at 2287-88.  For all of these reasons, Appellants'
<u>Descamps</u> claims should be rejected as waived, misplaced and
meritless.

## Summary

The result is that Voisine and Armstrong, severe
recidivists with three assault convictions each and a history of
domestic violence against women, were lawfully convicted in
Maine for their common-law batteries and subsequently properly

convicted in federal court under § 922(g)(9) for possession of firearms.  That conclusion is consistent with the plain meaning of § 922(g)(9), the legislative history regarding that law, and Castleman's reasoning making it clear that resort to other statutes to define domestic violence for § 922(g)(9) purposes is inappropriate.

Regardless of whether Appellants intentionally, knowingly or recklessly abused their domestic partners, or did so, as Senator Lautenberg put it, "almost without knowing what" they were doing as they slapped, hit, pushed and grabbed their so-called loved ones, see Castleman, 134 S.Ct. at 1412, they remain properly convicted under § 922(g)(9).  This Court therefore correctly decided Meade, Nason and Booker and should hold, again, consistent with Castleman's holding and reasoning, that a conviction under Maine's assault statute for what is necessarily a completed common-law battery qualifies categorically as a crime of domestic violence for purposes of § 922(g)(9).

## CONCLUSION

Appellants' convictions should be affirmed.

Respectfully submitted,

THOMAS E. DELAHANTY II
United States Attorney

 /s/ Renée M. Bunker
Dated: June 3, 2014.          Assistant U.S. Attorney

# Certificate of Compliance With Rule 32(a)

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

[✔] this brief contains ____5988____ words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[ ] this brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ ] this brief has been prepared in a proportionally spaced typeface using _____ in _____, *or*

[ ] this brief has been prepared in a monospaced typeface using _____ with _____.

(s) _/s/Renee M. Bunker_____

Attorney for _United States_____

Dated: _6/3/2014_____

Print      Save As...      Reset

**CERTIFICATE OF SERVICE**

I hereby certify that on June 3, 2014, I electronically filed Appellee's Supplemental Reply Brief, with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

> Virginia Villa, Esq.
> Federal Defender's Office
> 23 Water Street, 2nd Floor
> Bangor, ME   04401
> (207) 992-4111
> Virginia_villa@fd.org

> /s/Robert H. Booth, Jr.
> Paralegal Specialist